**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.**

ANTARCTICA FILMS ARGENTINA, S.A.,
a Société Anonyme of Argentina,
ANTARCTICA FILMS, INC., a Florida Corporation, and
ANTARCTICA MANAGEMENT, LLC f/k/a DABAMMA, LLC,
a Florida Limited Liability Company

       Plaintiffs,

v.

GAIA, INC. a Colorado Corporation,

       Defendant.

---

### COMPLAINT AND JURY DEMAND

---

    Plaintiffs Antarctica Films Argentina, S.A. ("**Antarctica**"), Antarctica Films, Inc. ("**AFI**") and Antarctica Management, LLC, formerly known as Dabamma, LLC ("**Dabamma**") (collectively, "**Plaintiffs**"), by and through undersigned counsel, hereby bring the following Complaint against Gaia, Inc. ("**Gaia**" or "**Defendant**") seeking injunctive relief and monetary damages, and state as follows.

## NATURE OF THE ACTION

1.     Plaintiffs bring this suit for copyright infringement and related claims because Defendant has produced and released a television show called "Initiation" which is a direct copy of Plaintiffs' television show "El Recordador" ("**The Rememberer**").  Defendant is not authorized by Plaintiff, and upon information and belief, was aware of Plaintiffs' copyright rights prior to releasing Season 1 of "Initiation."  Unless enjoined by this Court, Defendant will continue to infringe Plaintiffs' copyrights, despite receiving numerous demands to cease, demonstrating the willfulness of its copyright infringement.

## PARTIES

2.     Plaintiff Antarctica Films Argentina, S.A. is a Société Anonyme of Argentina with its principal place of business located at Arenales 605, PH1501 Vicente López, Provincia de Buenos Aires, Argentina.

3.     Plaintiff Antarctica Films, Inc. is a Florida Corporation with its principal place of business located at 8215 SW 72nd Avenue, Suite 421, Miami, Florida 33143.

4.     Plaintiff Antarctica Management, LLC formerly known as Dabamma, LLC is a Florida Limited Liability Company with its principal place of business located at 7270 North Kendall Drive, Suite 401, Miami, FL 33156.

5.     Plaintiff Antarctica is engaged in the production of films and television series, and is controlled by award-winning producer, Fernando Carranza ("**Carranza**").

6.     Plaintiff AFI is also engaged in the production of films and television, and is controlled by Carranza.

7.     Dabamma is engaged in the talent management business, and is controlled by Carranza.

- 2 -

8.      Defendant Gaia, Inc. is a Colorado Corporation with its principal place of business located at 833 West South Boulder Road, Louisville, Colorado, 80027.

9.      Gaia, Inc. was formerly known as Gaiam, Inc., and formally changed its corporate name in 2016.

## JURISDICTION & VENUE

10.      Plaintiffs assert claims under the Copyright Act, 17 U.S.C. § 101 et seq.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338 (Copyright Act).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendant are citizens of different U.S. States and/or citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  This Court also has supplemental jurisdiction over all of Plaintiffs' other claims pursuant to 28 U.S.C. § 1367.

11.      Defendant resides in, and conduct business in, the State of Colorado, and therefore is subject to this Court's personal jurisdiction.

12.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district, under § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, and under § 1391(b)(3) because Defendant is subject to personal jurisdiction in this judicial district.  Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

39723316.3

## THE MANAGEMENT AGREEMENT

13.     On September 20, 2017, Plaintiff Dabamma entered into an agreement with Yosoy Uno, LLC ("**Yosoy**") entitled "Representation and Management Agreement" (hereinafter, the "**Management Agreement**").   A true and correct copy of the Management Agreement (in Spanish) is attached hereto as **Exhibit A**.

14.     At the time of the Management Agreement, Yosoy was the purported agent of Matias De Stefano ("**De Stefano**"), as set forth in Section Eleven of that agreement, reproduced below (and translated from Spanish):

> ELEVEN: Since the company YO SOY UNO LLC represents the interests of Mr. Matías Gustavo De Stefano (ID Argentina No. 31,978,398) and the validity of the relationship between YO SOY UNO LLC and Matías DE STEFANO is an essential part of this agreement, the parties declare that this agreement is part of the contract signed between De Stefano and YO SOY UNO LLC which is incorporated into the present as Annex I.

15.     De Stefano is an individual who believes he has lived many different lives spanning hundreds of years, and that he has the ability to recall all of them.

16.     Through the Management Agreement, Yosoy granted Dabamma the exclusive right to exploit the image and intellectual property of De Stefano in the United States and all other non-Spanish speaking countries, per Section One of the agreement, reproduced below (and translated from Spanish):

> ONE: YO SOY UNO LLC grants DABAMA LLC all powers to manage and operate in the territory of the United States of America (USA) and the non-Spanish speaking countries the ***exclusive rights*** to the ***image, intellectual property, etc***. for the production of films, videos, books and publications, websites, development and commercial exploitation of applications (apps) and series of ***Matías De Stefano in film, television, cable television***, social networks, Internet, and any other medium written or audiovisual; merchandising; lectures, interviews and conferences in non-Spanish speaking countries… [emphasis added].

- 4 -

## **"EL RECORDADOR"**

17.     On or about January 22, 2018, De Stefano entered into a Production Agreement with Plaintiff Antarctica, under which Antarctica agreed to produce a documentary feature film and episodes for television series both entitled "El Recordador" ("**The Rememberer**" in English) (hereinafter, the "**Production Agreement**").  A true and correct copy of the Production Agreement (in Spanish) is attached hereto as **Exhibit B**.

18.     The Production Agreement specified that the documentary feature film and television series were to be based on a "script" by De Stefano (the "**Script**").

19.     The Production Agreement assigned all intellectual property rights in the Script (including all copyright rights) to Antarctica.

20.     The Script that De Stefano provided to Antarctica was a brief summary of the general concept, themes, and proposed shooting locations for the documentary feature film and television series; nothing more.

21.     Plaintiff Antarctica proceeded to hire a well-known documentary writer named Guido Tomio to create actual full-length scripts for a thirteen (13) episode television series, and for a documentary feature film.

22.     Antarctica began filming footage for the documentary feature film and television series in January 2018.

23.     At that time, Carranza was the producer of the documentary feature film and the television series, and also a controlling member of Antarctica, AFI and Dabamma.

24.     On or about March 14, 2018, in looking for a distributor for the documentary feature film and television series, Carranza mentioned De Stefano to one of his contacts at Defendant, Melissa Tittl ("**Tittl**").

25.     Carranza advised Tittl that he had an exclusive agreement with De Stefano to produce a documentary feature film and television series entitled "El Recordador."

26.     Tittl advised Carranza that she had never heard of De Stefano before, but when Antarctica had a "trailer and pitch" they should send the same to her at her Gaia e-mail address (which at the time was "**melissa.tittl@gaia.com**").

27.     Antarctica had completed most of the filming and production for the documentary feature film and television series by July 2018, with De Stefano participating in the filming as the subject/narrator.

28.     Additional filming took place in September and November 2018, and some final images were shot in February 2019.  All filming and production for the documentary feature film and television series was completed by February 2019.

29.     Unbeknownst to Plaintiffs at the time, De Stefano had cut a separate deal with Defendant to produce a television series identical to "El Recordador" called "Initiation."

30.     Upon information and belief, filming and production for Season 1 of "Initiation" began at Defendant's Colorado studios in or around May 2019, about three (3) months after Antarctica had completed filming and production on the documentary feature film and television series "El Recordador."

31.     The completed "El Recordador" documentary feature film was presented in Cannes, France in April 2019 at the special "MIPDoc" event leading up to the world famous Cannes Film Festival, which took place May 14, 2019 – May 25, 2019.  MIPDoc is a well-known industry screening event at which documentaries are presented to major television networks for potential licensing.

32.     In May 2019, the "El Recordador" documentary feature film was shown to a select group in Los Angeles, California (the "**LA Screening**").

33.     After the LA Screening, representatives from both Discovery Channel and Disney/National Geographic approached Carranza about licensing a television series based on the documentary feature film.

34.     On or about May 4, 2019, "El Recordador" was selected as "Best Documentary" at the Realtime International Film Festival (and in the months and years to follow, "El Recordador" went on to receive many industry accolades and awards).

35.     Upon information and belief, it was around this same time (May 2019) that De Stefano began filming Season 1 of "Initiation" at Defendant's Colorado studios.

36.     In June 2019, Carranza (as representative for Plaintiffs Antarctica and AFI) went to Colorado to meet with Defendant Gaia for the first time regarding the "El Recordador" documentary feature film and television series.

37.     Carranza reiterated to Defendant Gaia at that meeting that Dabamma had an exclusive agreement with De Stefano for the production of "El Recordador," as both a feature film and television series, including any prequels, sequels, and/or spin-offs.  No agreement was reached between Defendant and Plaintiffs Antarctica and AFI at that meeting.

- 7 -

38.     Upon information and belief, and unbeknownst to Carranza, Defendant had already begun working with De Stefano on Season 1 of "Initiation" at the time of the meeting in Colorado between Carranza and Defendant.

39.     During the period from August through October 2019, Carranza met with various other entities regarding the "El Recordador" documentary feature film and television series.

40.     Plaintiff AFI negotiated, and ultimately executed, a License Agreement with NGC Network Latin America, LLC ("**NGC**"), licensing NGC to air a thirteen (13) episode television series called "El Recordador-Las Bases Universales," and the "El Recordador" documentary feature film (the "**NGC License**").  The NGC License was dated August 2, 2019.  A true and correct copy of the NGC License is attached hereto as **Exhibit C**.

41.     NGC is a related entity of NGC Network US, LLC, the entity that controls the "National Geographic Channel" in the United States.

42.     In Latin America, some NGC programming was viewable at the time on a streaming service then-called "Fox Premium."  Attached hereto as **Exhibit D** are true and correct copy copies of the website pages from the former "Fox Premium" website (https://www.foxplay.com/es-mx/), showing various episodes of the television series "El Recordador" were at the time available for streaming (https://www.foxplay.com/es-mx/shows/rememberer-the-episode-guide/season-1).[1]

43.     The NGC License specified that the territory for the license would be "Latin America" including "Argentina, Bolivia, Brazil, Chile, Colombia, Costa Rica, Ecuador, El Salvador, Guatemala, Honduras, Mexico, Nicaragua, Panama, Paraguay, Peru, Uruguay, Venezuela, Puerto Rico, and the Caribbean Basin."

---

[1] The Fox Premium platform has since transitioned to the "Star Premium" platform.

44.     Season 1, Episodes 1-4 of "Initiation" premiered on Gaia's streaming service on or around October 1, 2019.

45.     All thirteen (13) episodes of "Initiation" (and more) are now available by subscription at Gaia's website (https://www.gaia.com/series/initiation?season=1).[2]

46.     On or about October 25, 2019, the "El Recordador" documentary feature film premiered in the United States (in New York, New York) to rave reviews, including qualifying for a semi-final for the Oscars.

47.     Season 1, Episode 1 of the "El Recordador" television series premiered on National Geographic's Latin American broadcast television channel ("**NatGeo LATAM**") on or about December 1, 2019, about two (2) months after the premiere of "Initiation" on Gaia's streaming service.

48.     NatGeo LATAM broadcasts throughout Latin America, including in Brazil, Argentina, Mexico.

49.     Season 1, Episode 1 of the "El Recordador" television series was publicly performed for the first time in at least Brazil, Argentina, Mexico on or about December 1, 2019. In the following weeks, subsequent episodes were publicly performed for the first time in at least Brazil, Argentina, Mexico.

50.     All thirteen (13) episodes of the "El Recordador" television series were publicly performed for the first time in at least Brazil, Argentina, Mexico by no later than January 15, 2020.

---

[2] Defendant has since premiered an additional three (3) Seasons of "Initiation", which are all available on Gaia's website.

## PLAINTIFF ANTARCTICA'S COPYRIGHTS

51.     Plaintiff Antarctica holds all copyright rights to the "El Recordador" television series, including all rights in and to Season 1 (the "**Works**").

52.     Specifically, Plaintiff Antarctica has copyright protection in the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events…" of the Works.  *See Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020).

## DEFENDANT'S COPYRIGHT INFRINGEMENT

53.     Season 1 of "Initiation" copies the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of Season 1 of "El Recordador".

54.     The Table below compares the titles and summaries of the first four (4) episodes of "El Recordador" to the first four (4) episodes of "Initiation".  Even when just looking at this small sample of information, it is clear that "Initiation" shares common plot and themes with "El Recordador."

| "El Recordador", Season 1 | Gaia's "Initiation", Season 1 |
|---|---|
| Episode 1:<br><br>"La Unidad"<br><br>El Universo significa un camino, es decir, que todo surge y acaba en un mismo lugar. ¿Cuál es la singularidad que hace que todo surja y exista? ¿Qué nos mueve a unirnos, y a buscar la unidad entre las partes?<br><br>**Translation**:<br><br>The Unit<br><br>The Universe means a path, that is, everything arises and ends in the same place. What is the uniqueness that makes everything arise and exist? What moves us | Episode 1: Unity<br><br>In this first episode of Initiation, Matias De Stefano takes us deep into the first dimension where we understand that all existence stems from unity. Before we take this journey to the origin of the universe, he offers us his unique understanding of the Akashic Records, which contain all information from every dimension of reality. At the beginning of everything, there was no light. Just thoughts that made waves; waves that made sound and light. And from that, everything we now know came into being. We have been told that our goal is to reach out to the stars. But to truly understand who we are and our place in the universe, we must go inward, to the first dimension |

39723316.3

| | |
|---|---|
| to unite, and to seek unity between the parties? | where we can find the truth of every reality, then learn how to consciously create new ones. |
| Episode 2:<br><br>"Tiempo – Espacio"<br><br>Nuestra realidad se basa en dos principios fundamentales la percepción del tiempo y el espacio en que nos movemos. Ambos son parte de una ilusión. ¿Cuál es el objetivo de dicha ilusión y cómo podemos entenderla para utilizarla en favor de nuestra vida diaria.<br><br>**Translation**:<br><br>Time – Space<br><br>Our reality is based on two fundamental principles: the perception of time and space in which we move. Both are part of an illusion. What is the objective of this illusion and how can we understand it to use it in favor of our daily lives. | Episode 2: Duality<br><br><br>From the single point of unity, in the first dimension, all reality is created by duality. Matias De Stefano explains the concept of duality, weaving the network of time which projects into space as every possibility of creation and experience. We can experience this as light and dark, positive and negative, or inner and outer worlds. As we begin to understand this concept of duality, we can come to realize that everything that is experienced in life is a reflection of our own selves. Thus, it becomes important to love yourself in every possible projection, just as you are taught to have compassion for others. |
| Episode 3:<br><br>"Los Principios"<br><br>El Universo está construido por 3 principios que dan sustento a la realidad la Frecuencia, la Energía y la Materia. Conocidas como la Sagrada Trinidad. ¿Cómo afectan a mi vida? ¿Cómo puedo usar estas herramientas para convertirme en creador de mi propia realidad?<br><br>**Translation**:<br><br>The Principles<br><br>The Universe is built by 3 principles that support reality: Frequency, Energy and Matter. Known as the Holy Trinity. How do they affect my life? How can I use these tools to become a creator of my own reality? | Episode 3: Trinity<br><br><br>From the interplay of positive and negative forces, comes the trinity, which creates our three-dimensional experience of time-space through sound, light and form. This is the original holy trinity as expressed in many of the world's religions. Matias De Stefano explains that the 3rd dimension is an experimentation of the expression of the universe, so that this great mind could experience everything that it was creating. From this grand experiment comes various versions of the sacred trinity including: spirit, soul & body; vibration, energy & matter; and frequency, emotions & DNA. All are essential building blocks for spiritual and physical life. |

| Episode 4: | Episode 4: Pillars of Reality |
|---|---|
| "Los Fundamentos"<br><br>Existen 4 pilares que se repiten en forma de ciclo en nuestro Universo la Expresión, la Experimentación, la Integración y la Trascendencia. ¿Logramos atravesar los 4 en nuestra vida? ¿Qué significan y cómo puedo moverme a través de ellos?<br><br>**Translation**:<br><br>The Basics<br><br>There are 4 pillars that are repeated in the form of a cycle in our Universe: Expression, Experimentation, Integration and Transcendence. Did we get through all 4 in our life? What do they mean and how can I move through them? | In order to understand what it means to transcend the body, and the third dimension, we need to understand the four pillars of reality. These can be perceived as four stages in the circle of life: birth, growth, reproduction and death. Matias De Stefano takes us into the fourth dimension, as a layer of reality which encompasses all possibilities of experience in the third dimension. He explains that science is needed to understand the third dimension, and we use spirituality to understand the fourth. As we cycle through the four pillars of reality, we gain the experiences needed to ultimately transcend physicality and continue our existence into higher dimensions of being. |

55.     Defendant had access to the content of Season 1 of "El Recordador" through De Stefano, who was working with Plaintiff Antarctica on the show at the same time he was working with Defendant on "Initiation."

56.     More specifically, at the same time that De Stefano was working with Defendant on "Initiation" (in April through October 2019), he was also working hand-in-hand with the director of "El Recordador" in reviewing scripts and mastering of the audio for "El Recordador" (documentary film and television series).

57.     At the time that De Stefano was working with Defendant on "Initiation" he had seen Antarctica's finished product of the "El Recordador" documentary and television series, and was championing Antarctica's work to news outlets and through his social media platforms.

- 12 -

58. As set forth above, Season 1 of "Initiation" is substantially similar to Season 1 of "El Recordador" in not only episode titles and summaries, but also in plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.

59. Indeed, Season 1 of "Initiation" is so substantially and strikingly similar to in plot, locations, and scenes to Season 1 of "El Recordador", that its constitutes either a blatant reproduction, or an unlawful derivative work.

## COUNT I

### (Direct Copyright Infringement Under 17 U.S.C. § 501)

60. Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. The Works are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter.

62. Pursuant to 17 U.S.C. § 106, Plaintiff Antarctica holds the exclusive rights to: (a) reproduce the Works, (b) prepare derivative works based on the Works, and (c) distribute and publicly perform the Works in the United States and elsewhere.

63. Plaintiff Antarctica's copyrights in these Works arise under laws of nations other than the United States that are parties to copyright treaties with the United States (such as the Berne Convention), including Argentina, Brazil and Mexico, where the Works were first published. Under 17 U.S.C. §§ 101, 411, the Works are non-United States works, and registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

64.     Defendant has reproduced the Works, made derivative works based on the Works, and publicly performed the Works to customers throughout the United States through the development and distribution of Season 1 of "Initiation," in violation of Plaintiff Antarctica's exclusive rights under 17 U.S.C. § 106.

65.     Plaintiff Antarctica has not authorized Defendant to distribute or publicly perform the Works in any manner.

66.     Defendant is directly infringing Plaintiff Antarctica's copyrights in violation of 17 U.S.C. § 501.   Each infringement of Plaintiff Antarctica's rights in each audiovisual work constitutes a separate and distinct act of copyright infringement.   Defendant, acting individually and/or jointly, willfully copied, distributed, and otherwise infringed on Plaintiff Antarctica's intellectual property interests in Season 1 of "El Recordador."

67.     Defendant's acts of infringement were willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff Antarctica's rights.

68.     As a result of Defendant's acts and conduct, Plaintiff Antarctica has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.

69.     In accordance with 17 U.S.C. §§ 504 and 505, Plaintiff Antarctica is entitled to its actual damages, including enhanced damages for willful infringement and attorney's fees.

70.     Defendant's acts are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiff Antarctica.

71.     Unless enjoined by the Court, pursuant to 17 U.S.C. § 502, Defendant will continue to engage in acts causing substantial and irreparable injury to Plaintiff Antarctica that includes damage to its reputation, goodwill, and lost sales, for which there is no adequate remedy at law.

## COUNT II

### (Contributory Copyright Infringement Under 17 U.S.C. § 501)

72.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     Upon information and belief, De Stefano has reproduced the Works, and made derivative works based on the Works, directly infringing Plaintiff Antarctica's copyright rights, in violation of the Production Agreement.

74.     Defendant is liable as a contributory copyright infringer for the infringing acts of De Stefano.  Through the development and release of Season 1 of "Initiation" in concert and coordination with De Stefano, Defendant enabled, induced, facilitated, and materially contributed to each act of infringement by De Stefano.

75.     Defendant has actual and constructive knowledge that De Stefano has ceded his copyright rights in the Script to Plaintiff Antarctica, and/or that De Stefano and Plaintiffs Antarctica and Dabamma were business partners in the production and release of a documentary feature film and television series about De Stefano.

76.     Acting with this actual and constructive knowledge, Defendant enables, induces, facilitates, and materially contributed to De Stefano's acts of copyright infringement, which could not have occurred without Defendant's enablement.

77.     Each such infringement of the Work by De Stefano, contributed to by Defendant, constitutes a separate and distinct act of infringement.

78.     Defendant's acts of infringement were willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff Antarctica's rights.

39723316.3

79.     As a result of Defendant's acts and conduct, Plaintiff Antarctica has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.

80.     In accordance with 17 U.S.C. §§ 504 and 505, Plaintiff Antarctica is entitled to its actual damages, including enhanced damages for willful infringement and attorney's fees.

81.     Defendant's acts are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiff Antarctica.

82.     Unless enjoined by the Court, pursuant to 17 U.S.C. § 502, Defendant will continue to engage in acts causing substantial and irreparable injury to Plaintiff Antarctica that includes damage to its reputation, goodwill, and lost sales, for which there is no adequate remedy at law.

## **COUNT III**

### **(Inducement Of Copyright Infringement Under 17 U.S.C. § 501)**

83.     Plaintiffs repeat and incorporates by reference the allegations in Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     Upon information and belief, De Stefano has reproduced the Works, and made derivative works based on the Works, directly infringing Plaintiff Antarctica's copyright rights, in direct violation of the Production Agreement.

85.     Defendant is liable for inducing the infringing acts of De Stefano.  Through the development and release of Season 1 of "Initiation" in concert and coordination with De Stefano, Defendant enabled, induced, facilitated, and materially contributed to each act of infringement by De Stefano.

86.     Defendant has actual and constructive knowledge that De Stefano has ceded his copyright rights in the Script to Plaintiff Antarctica, and/or that De Stefano and Plaintiffs

- 16 -

Antarctica and Dabamma were business partners in the production and release of a documentary feature film and television series about De Stefano.

87.     Acting with this actual and constructive knowledge, Defendant enables, induces, facilitates, and materially contributed to De Stefano's acts of copyright infringement, which could not have occurred without Defendant's enablement.

88.     Each such infringement of the Work by De Stefano, contributed to by Defendant, constitutes a separate and distinct act of infringement.

89.     Defendant's acts of infringement were willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff Antarctica's rights.

90.     As a result of Defendant's acts and conduct, Plaintiff Antarctica has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.

91.     In accordance with 17 U.S.C. §§ 504 and 505, Plaintiff Antarctica is entitled to its actual damages, including enhanced damages for willful infringement and attorney's fees.

92.     Defendant's acts are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiff Antarctica.

93.     Unless enjoined by the Court, pursuant to 17 U.S.C. § 502, Defendant will continue to engage in acts causing substantial and irreparable injury to Plaintiff Antarctica that includes damage to its reputation, goodwill, and lost sales, for which there is no adequate remedy at law.

### COUNT IV

**(Vicarious Copyright Infringement Under 17 U.S.C. § 501)**

94.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 93 of this Complaint as if fully set forth herein.

95.     Upon information and belief, De Stefano has reproduced the Works, and made derivative works based on the Works under the direction control and supervision of Defendant, directly infringing Plaintiff Antarctica's copyright rights, in direct violation of the Production Agreement.

96.     Upon information and belief, Defendant refused to exercise supervision and control over De Stefano to ensure that he did not infringe Plaintiff Antarctica's copyright rights in the Works.

97.     As a direct and proximate result of such refusal to exercise control, De Stefano infringed Plaintiff Antarctica's copyright rights through the development and release of Season 1 of "Initiation."

98.     Defendant derived, and continues to derive, a significant and direct financial benefit from De Stefano's acts of infringement including, but not limited to, financial benefit from advertising revenue, increased user traffic, and raised value of Defendant's businesses arising from the 'draw of the infringing copyrighted programs.

99.     Each such infringement of the Works by De Stefano, for which Defendant is vicariously liable, constitutes a separate and distinct act of infringement.

100.     Defendant's acts of infringement were willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff Antarctica's rights.

101.     As a result of Defendant's acts and conduct, Plaintiff Antarctica has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.

102.     In accordance with 17 U.S.C. §§ 504 and 505, Plaintiff Antarctica is entitled to its actual damages, including enhanced damages for willful infringement and attorney's fees.

103.     Defendant's acts are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiff Antarctica.

104.     Unless enjoined by the Court, pursuant to 17 U.S.C. § 502, Defendant will continue to engage in acts causing substantial and irreparable injury to Plaintiff Antarctica that includes damage to its reputation, goodwill, and lost sales, for which there is no adequate remedy at law.

## COUNT V

### (Intentional Interference With Contractual Relations)

105.     Plaintiffs repeat and incorporate by reference the allegations in Paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.     Plaintiff Dabamma has a valid contract with De Stefano, namely, the Management Agreement.

107.     Upon information and belief, Defendant was aware of that contract when it was negotiating with De Stefano for the production and release of Season 1 of "Initiation."

108.     Seasons 1, 2, 3, and 4 of "Initiation" are available for streaming to United States residents subscription at Gaia's website (https://www.gaia.com/series/initiation?season=1; https://www.gaia.com/video/preview-season-3-initiation-0).

109.     Defendant intentionally induced De Stefano to breach the Management Agreement, by asking him to consent to the production and development of at least Season 1 of "Initiation," knowing that such content would be made available in the United States and other non-Spanish speaking countries, in violation of the grant of rights to Dabamma in the Management Agreement.

110.     Plaintiffs Dabamma and Antarctica have been damaged by Defendant's actions in inducing such breach.

111.     Specifically, such breach deprived Dabamma of its exclusive rights to exploit the image and intellectual property of De Stefano in the United States and all other non-Spanish speaking countries, per the Management Agreement, thereby causing Dabamma monetary damages through lost profits.

112.     Upon information and belief, such breach also caused NGL to not exercise its option under the NGL License to have Antarctica produce additional episodes and seasons of "El Recordador," thereby causing Antarctica monetary damages through lost profits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

A. For a declaration and judgment that Defendant has infringed Plaintiffs' copyrights in the Works in violation of 17 U.S.C. sec 101, *et seq*.

B. For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their officers, agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

> 1. directly or indirectly infringing in any manner any of Plaintiffs' exclusive rights under the Copyright Act, whether now in existence or hereafter created, without limitation;
>
> 2. causing, contributing to, inducing enabling, facilitating and/or participating in the infringement of Plaintiffs' copyrights, without limitation;
>
> 3. retransmitting, streaming, distributing, or publicly performing in the United States, by means of the Gaia streaming service or any other device or process, the Works, or the programming such as Season 1 of "Initiation" that comprises the Works and/or derivative versions of the Works; and
>
> 4. advertising, displaying, or marketing the Works, or any other programming such as Season 1 of "Initiation" that comprises the Works and/or derivative versions of the Works.

C. For infringement of the Works, Plaintiffs' actual damages and the profits of Defendant that are attributable to the violations alleged herein of those Works pursuant to 17 U.S.C. § 504(b).

D. For Plaintiffs' attorneys' fees and costs under 17 U.S.C. § 505.

E. For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F. For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

G. For an accounting, the imposition of a constructive trust, restitution of Defendant's profits and damages according to proof.

39723316.3

H. For such additional relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby request and demand trial by jury on all claims so triable.

Dated: <u>February 28, 2022</u>

<div style="margin-left: 50%;">

<u>*s/ Airina L. Rodrigues*</u>

Airina L. Rodrigues, #56149
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Telephone: 303.223.1252
Fax: 303-223-1111
Email: arodrigues@bhfs.com

<u>Of Counsel</u>:
Darius C. Gambino, Esq.
(Pennsylvania Bar, No. 83496)
SAUL EWING ARNSTEIN & LEHR LLP
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
P: (215) 972-7173
E: Darius.Gambino@saul.com

Ariel Deray, Esq.
(Florida Bar No. 118163)
SAUL EWING ARNSTEIN & LEHR LLP
200 E. Las Olas Blvd.
Suite 1000
Fort Lauderdale, FL 33301
P: (954) 713-7610
E: Ariel.Deray@saul.com

*Attorneys for Plaintiffs Antarctica Films
Argentina, S.A., Antarctica Films, Inc., and
Antarctica Management, LLC f/k/a/
Dabamma, LLC*

</div>

39723316.3